## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 5:19-cr-00535 |
| | : | |
| FRANCES EDDINGS (1) and | : | |
| JUDE DENIS (2) | : | |

_____

### O P I N I O N
**Defendants' motions for a new trial, ECF Nos. 160 and 161 – Denied**

**Joseph F. Leeson, Jr.**                                      **October 20, 2022**
**United States District Judge**

## I.      INTRODUCTION

Frances Eddings and Jude Denis were found guilty by a jury of three counts of intentionally accessing a protected computer without authorization and with conspiracy to intentionally access a protected computer without authorization. The Defendants now move for a new trial. *See* Mot., ECF No. 160.[1] They argue that several of the Court's rulings made before the trial and during the trial constitute a miscarriage of justice that warrant a new trial under Federal Rule of Criminal Procedure 33. Since the Court disagrees, the Motion is denied.

## II.      BACKGROUND

*The Crime*

The Prostate Cancer Foundation hired Jude Denis to work on a fundraising event. In order to perform her work, Denis was given access to a work email account. Unfortunately, the employee-employer relationship soon turned sour. According to Denis, she had been misled about the details

---

[1]      Eddings filed a motion for a new trial, *see* ECF No. 160, and Denis joined in the motion as to certain parts, *see* ECF No. 161. Throughout this Opinion, the Court refers to both as a single motion.

of the job, including how much she would be paid. Denis shared her frustrations with her friend, Frances Eddings.

Eddings offered to help Denis by negotiating on her behalf with the Foundation. Using her access to the email account, Denis downloaded various internal documents regarding the fundraising event. Eddings then emailed the Foundation and attached the downloaded documents. In her email, Eddings demanded that the Foundation pay Denis $187,000 or else they would go public with the documents.

The Foundation notified the authorities and, after an investigation, Denis and Eddings were both charged with conspiracy and three counts of unauthorized access to a protected computer under 18 U.S.C. §§ 1030(a)(2), (b), (c)(2)(B), and 2. The Defendants were joined for trial.

*Before Trial*

A joint trial was scheduled for the Defendants for February 3, 2020. *See* ECF No. 29. At the final pretrial conference, counsel for Denis requested a continuance of the trial so that Denis could receive a competency evaluation. Eddings objected to the continuance and moved for a severance, arguing that delaying the trial violated her right to a speedy trial. The Court granted Denis's request for a continuance so that she could receive a competency evaluation and denied Eddings's request for a severance. *See* ECF No. 59. The Court denied Eddings's motion for a severance for three reasons: "(1) the Court anticipates that the issue of Defendant Denis' competency will be resolved expeditiously, and as a result the risk of an unreasonably-prolonged continuance appears slight; (2) trial of this case will require a not insignificant expenditure of resources by the Government, the Court, and potential witnesses and jurors, and duplication of these expenditures to conduct two separate trials where the Government's evidence will likely be the same would be an injudicious use of these resources; and (3) this is a conspiracy case, and the Court recognizes there is a presumption that in conspiracy cases co-conspirator defendants should be tried together." ECF No. 64. Denis was

found competent to stand trial on March 4, 2020, *see* ECF No. 72, and trial was rescheduled for March 23, 2020, *see* ECF No. 78.

In preparation for trial, the Government filed proposed jury instructions with a legal memorandum in support. *See* ECF No. 90-1. In that memorandum, the Government stated that the Defendants created "a campaign to extort." *Id*. In response to that memorandum, Eddings asked the Court to preclude the Government from using the term "extortion" during the trial because the Defendants had not been charged with extortion and any suggestion to the contrary would be improper. *See* ECF No. 100. According to Eddings, the Government intended to use the word during trial to paint the Defendants in a nefarious light. *See id*. The Court denied that request by order dated April 23, 2021, because it did not believe it was "too much to ask the jurors in this matter to consider 'extort' and 'extortion' as these words are used in common parlance" and, also, because the jury instructions would eliminate any risk of jury confusion and prejudice to the Defendants. ECF No. 109.

As trial drew near, the Governor of the Commonwealth of Pennsylvania declared the existence of a disaster emergency because of the Covid-19 virus. As a result, Judge Juan R. Sanchez, the Chief Judge for the Eastern District of Pennsylvania, issued a standing order that suspended all civil and criminal jury trials that were scheduled between March 13, 2020 and April 13, 2020. *See* ECF No. 83. Pursuant to that standing order, the Court rescheduled trial for this matter to April 27, 2020, tolling the speedy trial clock in the interests of justice. *See* ECF No. 88.

The Chief Judge issued a new standing order on April 10, 2020, extending the suspension of all criminal and civil jury trials until May 31, 2020, in order to protect the public health and safety of court personnel and all persons entering the courthouse. *See, e.g.* ECF No. 93. "In each Standing Order, the Chief Judge found that the period of delay in each case shall be excluded under the Speedy Trial Act, as the ends of justice served by granting a continuance outweigh the best interest

of the public and each defendant in a speedy trial." *Id*. The Chief Judge issued additional standing orders multiple times extending the suspension of trials. Consistent with these orders, this Court continued the Defendants' trial nine more times because of Covid-19 concerns, each time adopting the Chief Judge's finding that the continuance was in the interests of justice and excludable from the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(A). *See* ECF Nos. 96, 98, 103, 105, 107, 112, 116, 126, 131. Eddings' counsel requested one additional continuance due to scheduling conflicts, waiving the Speedy Trial Act, and the Court granted her request. *See* ECF No. 122. Trial was eventually scheduled for, and began on, April 4, 2022. *See* ECF No. 132.

Eddings also filed a motion to dismiss the Superseding Indictment for failing to state a claim based on the then recently decided Supreme Court case, *Van Buren v. United States*, 141 S. Ct. 1648 (2021). *See* ECF No. 110. Eddings argued that, under *Van Buren*, the conduct alleged in the Second Superseding Indictment could not amount to unauthorized access of a protected computer because Denis was given access to the work email account, and because Denis did not attempt to access the email account after the Foundation changed its password. *See id.* at 5–6. The Court denied that motion, explaining its reasoning in a detailed opinion. *See* ECF No. 114. In sum, the Court explained that *Van Buren* dealt specifically with the issue of whether an employee can be liable for exceeding their authorized access, not whether the employee accessed a computer without authorization. Since the Government's theory in this case was that Denis's authorization had been revoked, it was not counter to the Supreme Court's holding in *Van Buren*. *See id.*

The parties all proposed different instructions on the meaning of "unauthorized access" of a protected computer under 18 U.S.C. § 1030. The Government proposed the following instruction (the Government's "Supplemental Request"):

> **Definition of "Unauthorized Access"**
> **Counts Two through Four of the superseding indictment charge each defendant with unauthorized access to a protected computer. The term "authorization" means "formal permission or approval" or "sanction." To**

**"access" means "[t]o obtain, acquire," or "[t]o gain admission to." Thus, in general, "unauthorized access" means to gain access to something without permission or approval.**

  **A lack of authorization can be either implicit or explicit. For example, password protection itself normally limits authorization by implication.**

  **Within the employment context, "an employee is authorized to access a computer when his employer approves or sanctions his admission to that computer." Therefore, "he accesses a computer 'without authorization' when he gains admission to a computer without approval."**

  **An employee's access once given can be revoked or rescinded. Ordinarily, the fact that an employee no longer worked for his or her employer when he or she accessed its server "logically suggests that the authorization he enjoyed during his employment no longer existed." However, employment is merely one factor and it is up to you to decide if any access to a protected computer that you conclude occurred in this case was or was not "authorized."**

*See* ECF No. 90. Eddings proposed the following instruction, which was based off a model criminal jury instruction from the Ninth Circuit ("Eddings's Request 2"):

**Without Authorization—Defined**

  **A person uses a computer "without authorization" when the person has not received permission from the [owner] [person who] or [entity which] controls the right of access to the computer] for any purpose,**

  **or**

  **when the [owner] [person who] or [entity which] controls the right of access to the computer] has withdrawn or rescinded permission to use the computer and the person uses the computer anyway.**

*See* ECF No. 124. Denis proposed a third instruction.

*The Trial*

During the first day of trial, a jury was selected, and the parties gave their opening statements. Outside the presence of the jury, Denis informed the Court that she had no way of traveling to the courthouse for the remainder of the trial. The Court therefore arranged for the purchase of a one-way bus ticket for Denis so that she could be present for the following day of trial.

Denis did not show up for the second day of trial. The marshals informed the Court that Denis had not retrieved the bus ticket that the Court had arranged for her the day before, and her stand-by-counsel reported that he had been unable to reach her by phone. As a result, the Court

brought the jury in, informed them that the trial was being postponed due to an "unavoidable delay," and then excused them temporarily. For approximately one hour, the Court attempted to contact Denis through pretrial services and other means without success. At 10:19 a.m., the Court issued a warrant for Denis's arrest for failing to appear for trial.

Denis was arrested and brought to the courthouse around 1:56 p.m. The Court informed her that the jury had not been told that the trial had been delayed due to her absence. Denis wore what appeared to be an unbuttoned jacket, which revealed her bra underneath the jacket. The Court asked the parties if there was anything that needed to be discussed before bringing in the jury to resume the trial. The Government and both defendants confirmed that they were prepared to proceed. No one objected to Denis's attire. Since she acted pro se, Denis cross-examined the Government's witnesses, including the Government witness that testified during the second day, Victor Rodin. After excusing the jury for the day, the Court revoked Denis's bail.

At the beginning of the third day of trial, Denis entered the courtroom wearing a prison jumpsuit. She claimed that the marshals had not given her enough time to change into her other clothing. The marshal, on the other hand, stated that Denis had been given ample time to change but that she had refused. The Court asked Denis whether she would like to change into her other clothing and explained that it would give her extra time to do so. Denis declined, stating that she preferred to wear the prison jumpsuit. Eddings did not object to Denis wearing the prison jumpsuit.

Before bringing in the jury, Eddings renewed her motion to sever the trial. She argued that the jury's opinion of her was tainted by Denis's behavior. Specifically, Eddings argued that Denis had been overly emotional during the trial thus far and had screamed at Victor Rodin during her cross-examination. The Government and Denis both opposed the motion to sever, and the Court denied the motion.

On the fifth day of trial, the Government rested, and then both Defendants rested. The Court excused the jury for the remainder of the day and held the charge conference. At the charge conference, the Court instructed the parties on the jury instructions it would give and heard argument on the parties' proposed instructions on the topic of "unauthorized access" and what it means to access a computer "without authorization."

The Court denied the Government's Supplemental Request because it essentially instructed the jury that the Defendants were guilty of the charged crimes if Denis ever accessed the email account once her employment ended.[2] It granted Eddings's Request 2 with one addition: "An employee's authorization to access a computer may be revoked or rescinded either explicitly or implicitly." The Court then took several matters under advisement and adjourned for the day.

On the sixth and final day of trial, the Court continued the charge conference before bringing in the jury. The Court informed the parties that it had modified its jury instruction regarding the meaning of "without authorization" after further reflection. It would no longer be giving Eddings's Request 2 with the additional sentence. Instead, it planned to give Eddings's Request 2 verbatim. The Government objected, and the Court heard argument on the matter. The Court heard argument from each party and took a brief recess to consider the issue. *See* Notes Testimony April 11, 2022, 17:15–20, ECF No. 179 ("Ladies and gentlemen, I wish this were a clear area of the law, although, if it were, we'd be a lot more efficient in proceeding. But, we're going to take a brief recess, because what you said, all of you, is very important and we're trying our best to get it right.").

---

[2]      The Court found the following language from the Government's Supplemental Request to be particularly troubling: "Ordinarily, the fact that an employee no longer worked for his or her employer when he or she accessed its server 'logically suggests that the authorization he enjoyed during his employment no longer existed.'"

During the recess, the Court crafted its own instruction, borrowing heavily from Eddings's

Request 2. Returning from recess, the Court informed the parties that it would give the following

instruction (the "Instruction"):

> **"Without Authorization" Defined**
> **A person uses a computer without authorization when the person has not received permission from the person who controls the right of access to the computer for any purpose,**
> **or**
> **when the person who controls the right of access to the computer has withdrawn or rescinded permission to use the computer and the person uses the computer anyway.**
> **Once given, a person's authorized access may be revoked. Whether authorized access has been revoked or, whether the cessation of employment rescinds authorization, is a factual question for you to decide as the jury.**

Both Defendants objected to the Instruction. Eddings argued that the Instruction stated the law

incorrectly and gave the jury a legal issue to determine. *See* N.T. 04/11/22 19:7–17. Denis also

argued that the Instruction stated the law incorrectly, specifically under *Van Buren*. *Id*. at 19:20–

21:12. The Court overruled the objections and moved onto discussing the verdict form. After

discussing the verdict form, the Court asked if there was anything "else before we get to closing

arguments?" *Id*. at 26–27. Neither defendant raised any additional issues to be addressed, nor did

they ask for any additional time before bringing the jury in.

During closing arguments, counsel for Eddings used a PowerPoint slide as a visual aid. On

her slide show, counsel displayed the word "extort" or "extortion" or "extortionist" twenty different

times and argued that the Government was attempting to mislead the jury by using the word. She

stated, among other things, "they want to distract you and continue to call it extortion." N.T.

4/11/22 43:5–6, ECF No. 167. She also argued that her client, Eddings, was merely "helping Jude

Denis with an employment dispute." *Id*. at 23. She argued that Eddings was in the courtroom only

because she had tried to be a friend to Denis. Denis gave her own closing argument because she was

acting pro so. While giving her remarks, she mentioned that she had suffered from depression, that

she had considered taking her own life on multiple occasions, and that Eddings helped her to see that her life had value. *See id.* at 45.

In his rebuttal, the prosecutor explained that "[n]o one's sitting here arguing that the defendants are charged with extortion." *Id.* at 50. He went on to say that the Defendants weren't charged with extortion because their plan was "unsuccessful." *Id.* The prosecutor focused the jury on the Defendants' charges, explaining that the "reason the money in this case is important is, it's because of the reason for the computer intrusion." *Id.*

The prosecutor also addressed Denis's comments about her suicidal ideation. Specifically, the prosecutor stated, "what Defendant Denis just said has a sad element to it; right? There's no doubt. But, this – Defendant Eddings is the one doing the direction." *Id.* at 53. He went on to say that, "[s]he's not in this because she's a friend, she's in this because she took advantage of Defendant Denis and her mental health situation, and took advantage of the fact that she still had access and she tried to gain $37,000 out it." *Id.* at 54. Following the prosecutor's rebuttal, Eddings moved for a mistrial, arguing that the prosecutor's statements were improper. Eddings also renewed her objection to the Instruction, arguing that it "expands existing law" and had been "crafted to accommodate the government's theory of the case and that is a violation of the rule of lenity." N.T. 4/11/22 34:19–21, ECF No. 179.

The Court denied Eddings's motion for a mistrial and overruled her renewed objection to the Instruction. However, it did instruct the jury on the following:

> **Extortion is not, repeat, not a part of this case. The defendants are not charged with extortion. You are not to consider that subject in your jury deliberations. Why a charge of extortion was not brought is not relevant and not to be considered in your jury deliberations and any arguments by the lawyers or any of the parties in this case about that subject is to be disregarded by you.**

*Id.* at 46:10–16.

After the Court read instructions to the jury, including the Instruction, the jury began deliberations. Ultimately, the jury found the Defendants guilty on all counts. Eddings now moves for a new trial, arguing that the Court committed several errors both before and during the trial. Denis joins in part. The Government opposes. *See* Resp., ECF No. 181.

### III.    LEGAL STANDARD—Motion for New Trial

Under the Federal Rules of Criminal Procedure, a defendant may move the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Justice requires a new trial only when errors were made in the first trial, and it is reasonably probable that the verdict was influenced by those errors. *See United States v. Georgiou*, 777 F.3d 125, 143 (3d Cir. 2015). In other words, a district court may only grant a new trial if it "believes that there is a serious danger that a miscarriage of justice has occurred." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (cleaned up). A serious danger of a miscarriage of justice occurs when "an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008). Granting motions for new trials is disfavored, and it should only be done in "exceptional" cases. *See id.* "The defendant bears the burden of proving that a new trial ought to be granted." *United States v. Steptoe*, No. CRIM.A. 01-429-02, 2003 WL 22016866, at *1 (E.D. Pa. June 19, 2003), *aff'd*, 126 F. App'x 47 (3d Cir. 2005).

### IV.    ANALYSIS

Eddings contends that a new trial is warranted in this case because of five alleged errors. The Court addresses each in turn in the order that Eddings lists them in the Motion. Ultimately, the Court denies the Motion because it determines that the alleged errors are either not errors or were not so serious that they influenced the verdict.

### 1. *Motions for Severance*

Eddings first contends that the Court erred by denying her motions for severance. Federal Rule of Criminal Procedure 8(b) states that two defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Indeed, joint trials play a crucial role in the criminal justice system by promoting efficiency and avoiding inconsistent verdicts. *Zafiro v. United States,* 506 U.S. 534, 537 (1993). A defendant may move for severance from a co-defendant "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Voigt,* 89 F.3d 1050, 1094 (3d Cir. 1996) (citing *Zafiro*, 506 U.S. at 539). To prevail on a motion for severance, a defendant must pinpoint clear and substantial prejudice resulting from a joint trial.

In her pre-trial motion, Eddings argued that, should the trial be continued for Denis's sake, then her right to a speedy trial would be impeded. The Court acknowledges that it did take an unfortunately long time for this matter to reach trial. However, the vast majority of the continuances were due to Covid-19 concerns. The number of positive Covid-19 cases inhibited the Court's ability to safely impanel a jury, call witnesses, and gather courtroom staff in a confined area. Thus, this Court and the Chief Judge rightly determined that at the time that each continuance was granted, the ends of justice served by granting a continuance outweighed the best interests of the public and of the defendants in a speedy trial and tolled the speedy trial clock. One of the continuances was granted at Eddings's request. In reality, the trial was only continued one time for Denis's sake for a competency evaluation. That continuance caused the scheduled trial date to be moved by 50 days. The 50-day continuance for Denis is a reasonable period of delay which is also excludable from the speedy trial clock as to Eddings. *See* 18 U.S.C. § 3161(h)(7). After accounting for all the delays that

tolled the speedy trial clock, trial ultimately commenced before the clock ran. *See Zedner v. United States*, 547 U.S. 489, 497 (2006) ("To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start."). Thus, Eddings's right to a speedy trial was not compromised by the joint trial.

During the trial, Eddings renewed her motion for severance, claiming that Denis's manner of cross-examining Victor Rodin rose to the level of serious risk of prejudice to merit severance**.** In the Motion, Eddings's raises, for the first time, additional reasons why her motion for severance should have been granted: i) the delay Denis caused to the second day of trial; ii) Denis's attire during the second day of trial; and iii) Denis's decision to wear prison garb for a majority of the trial.

The Court will first address Denis's manner of cross examining the Government's witness. Denis got emotional at times during her cross-examination of Victor Rodin, and the Court sustained several objections from the Government as to the form of Denis's questions. However, courtroom behavior from a co-defendant must be particularly obnoxious to warrant severance. *See, e.g.*, *United States v. Rocha*, 916 F.2d 219, 229 (5th Cir. 1990) (upholding denial of motion to sever even though co-defendant mouthed the words, "You are dead" to a witness with an accompanying motion indicating he would slit the witness's throat during a direct examination); *see also United States v. Marshall*, 458 F.2d 446, 448, 452 (2d Cir. 1972) (upholding denial of motion to sever even though co-defendant directed obscenities at the court and threw a chair towards the jury box). Denis's method of cross-examining Victor Rodin was, at worst, mildly disruptive. The Court notes that Denis behaved extremely professional for the majority of the trial, especially considering she acted pro se. At no point did Denis's behavior come close to the type of behavior that would require a severance.

Next, the Court addresses the three new arguments that Eddings raises for the first time in the Motion. Since Eddings did not object to these things during trial, nor did she state them as

reasons for her renewed motion for severance, she waived these objections. *See Estelle v. Williams*, 425 U.S. 501, 512–13 (1976) (holding that "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation").The Court could not have erred for not granting a motion to sever if Eddings never moved to sever for these reasons. Even if the Court assumed that these arguments had not been waived, none of them are serious enough that they would have been reason to grant a severance, nor do they warrant a new trial.

In sum, any potential prejudice to Eddings by trying the Defendants together was outweighed by the numerous efficiency and fairness interests sustained by joint trials.

### 2. *Pretrial Motion to Preclude Use of "Extortion" During Trial*

Eddings next contends that the Court erred in denying her pretrial request to preclude the Government from using the word "extortion", asserting that the Government's use of the word during trial was what she had sought to prevent.

As previously explained, the Court, in a pretrial ruling, denied Eddings's request to preclude the Government from using the term extortion during trial, explaining that the words "extort" and "extortion" are words used in common parlance, that it was not too much to ask the jurors to consider such words as used in common parlance, and that, to the extent there was any risk of confusion or prejudice, the jurors would be instructed on the law. *See* ECF No. 109. The Court did not err by denying Eddings's pretrial motion to preclude the use of the word "extortion" and Eddings has offered no legal support for her argument to the contrary.

Moreover, even if this decision was erroneous, Eddings has not shown it is reasonably probable that failure to preclude use of "extortion" influenced the verdict. The word was used colloquially at trial, not in a technical or legal way. Use of the word during trial did not create any

risk that the jury would convict Eddings of extortion because it was not charged in the indictment, nor was extortion listed on the jury verdict sheet.

The Government used the word "extort" a few times in its opening statement, not in a legal way but to tell the jurors generally about the Defendants' "plan." *See* N.T. 04/04/22 42 and 45, ECF No. 174. The Government also discussed the charges and the elements of the offenses in its opening statement but made no other reference to "extort" or "extortion." *See id.* at 45–50. Immediately prior to opening statements, the Court had also informed the jury that the Defendants were charged with conspiracy and unauthorized access to a computer and instructed the jury on the elements of the charged offenses. *See id.* at 36–39. Accordingly, the risk of any potential confusion about whether Eddings was charged with extortion was eliminated. Thus, Eddings has not shown how the opening statement influenced the verdict.

Similarly, reference to "extortion" during trial testimony did not create the risk of jury confusion or of influencing the verdict. Agent Ruibal referred to extortion to explain the nature of his initial investigation. He testified that his boss had received a complaint "regarding a potential computer intrusion and unauthorized access of the Prostate Cancer Foundation/International Finance Company's computers. In addition to that we believed that there may be violations of law involving extortion and conspiracy." N.T. 04/06/22 82:4–8, ECF No. 163. Similarly, Ruibal explained that the money reference in the Defendants' email was the "the potential extortion angle to our investigation," and informed the jury that his complaint form "was based upon unauthorized access, a potential extortion, and a conspiracy." *See id.* at 99–100, 104–05, 129. Ruibal also told the jury that he does not make legal conclusions but was using the term ". . . as facts as part of my investigation . . . we were beginning the investigation that extortion was something that we were actively looking at as a part of a potential violation of Federal law that was being investigated. . . ."

*Id.* at 129–30. Eddings has not shown how this testimony rendered the Court's pretrial ruling erroneous or influenced the verdict.

In closing arguments, the Government did not use the word "extortion" until rebuttal, in direct response to Eddings's use of the words "extort," "extortion," and "extortionist". *See* N.T., 04/11/22, ECF No. 167. *Inter alia*, Eddings's counsel told the jury: "Defendants are not charged with extortion. Fran Eddings is not charged with extortion, yet the Government is trying this case as though it were an extortion case from the very beginning to the very end of this case. Prosecutors opening, they attempted to extort. They planned to extort. And, then we have Case Agent Ruibal, extortion; and I'm objecting. Extortion; and I'm objecting. And on, and on, and on . . . ." *See id.* at 42 (". . . extortion, extortion, extortion. Because extortion is sexy."). Counsel for Eddings made it clear in her closing argument that Eddings had not been charged with the actual crime of extortion and suggested that the Government was trying to use the word as a smokescreen to hide its weak case.

In rebuttal, the prosecutor stated: "[Y]ou didn't hear me say the word extortion once. You know, yes, did Agent Ruibal use the word extortion? To put that in the context, he was talking about extortion, that's what I started out to investigate. No one's sitting here arguing that the defendants are charged with extortion. They're not." *See id.* at 50. The prosecutor's statement in rebuttal was a fair response to Eddings's closing argument[3] and further confirmed for the jury that Eddings was

---

[3] To the extent Eddings argues that additional statements by the prosecutor during rebuttal were not a fair response, such statements are addressed below in the section regarding allegations of prosecutorial misconduct. In this section, the Court addresses Eddings's argument that the Court's pretrial ruling was erroneous and, if erroneous, whether it impacted the verdict. In finding here that the prosecutor's rebuttal was a fair response, the Court notes that Eddings's counsel told the jury in its closing that the prosecutor was making the case all about extortion, even though, as previously discussed, the prosecutor's opening discussed the charges, which did not include extortion, and in five days of testimony, only Agent Ruibal mentioned extortion. Eddings's counsel also suggested to the jury that despite her repeated objections to Agent Ruibal's testimony during the trial, the prosecutor continued to reference "extortion" because it was sexy. However, contrary to counsel's suggestion, Eddings's counsel made only one objection during Agent Ruibal's testimony to his use

not charged with extortion. *See Alicea v. United States*, 100 F. Supp. 3d 457, 482 (E.D. Pa. 2015) (explaining that the prosecution may make a "reasonable response to improper attacks by defense counsel" in rebuttal). Accordingly, Eddings has not shown that reference to "extortion" during trial created any risk that the jury would convict Eddings of extortion because it was not charged in the indictment, nor was extortion listed on the jury verdict sheet. The Court's pretrial ruling was not erroneous and, even if it were, Eddings has not shown that any error influenced the verdict.

Moreover, the Court's limiting instruction on extortion curbed any risk that the references during trial could have confused the jury or influenced the verdict. The Court specifically instructed the jury that the Defendants were not charged with extortion and that they "are not to consider the subject in" their deliberations and that why "a charge of extortion was not brought is not relevant and not to be considered." N.T. 04/11/22 46:10–16, ECF No. 179. The Court must assume that the jury followed that instruction because Eddings has not shown an overwhelming probability that the jury was unable to follow the instruction. *See United States v. Fattah*, 914 F.3d 112, 174 (3d Cir. 2019); *see also United States v. Hakim*, 344 F.3d 324, 326 (3d Cir. 2003) (explaining that improperly admitted testimony can be cured with a jury instruction).

### 3. *Motion to Dismiss Based on* **Van Buren**

Eddings also contends that the Court erred by denying her motion to dismiss the Superseding Indictment based on *Van Buren*. Eddings, "[f]or all the reasons set forth in the initial motion, and to preserve the record, [] submits that her motion to dismiss should have been granted." *See* Mot. at 4–5. She does not elaborate on why this was an error and does not make any arguments

---

of "extortion." *See* N.T. 129, 04/06/22, ECF No. 163 ("Objection to the continued use of extortion. Legal conclusion, the Defendants are not charged with extortion."). The Court sustained the objection as to legal conclusions. *See id.* The rebuttal was therefore a fair response to the implication by Eddings's counsel that the prosecutor was improperly focusing on extortion as a means of diverting the jury's attention from the facts of the case and to counsel's version of Ruibal's testimony.

that are unique from those she made in her original motion to dismiss the Superseding Indictment. As a result, the Court incorporates in this Opinion its analysis from its prior opinion rejecting this same argument. *See* ECF No. 114; *United States v. Eddings*, No. 5:19-CR-00535, 2021 WL 2527966 (E.D. Pa. June 21, 2021). The holding in *Van Buren* did not preclude the Government's theory in this case that Denis's authorized access was revoked, meaning that she accessed the email account without authorization. Thus, the Court did not err by denying Eddings's motion to dismiss the Superseding Indictment.

### 4. *The Instruction*

A majority of the Motion is dedicated to the argument that the Court erred by giving the Instruction. Eddings raises many issues with the Instruction, but before the Court delves into them, it is necessary to first understand the parties' theories of the case.

It is important to note at the outset that the Government stipulated to the fact that Denis was given authorized access to the email account when she was first hired. According to the Government's theory, Denis's authorized access was revoked when she resigned. Eddings's theory, on the other hand, was that Denis never officially resigned from her employment. Instead, she contended that Denis's employment was simply put on pause. As a result, Eddings argued that Denis's authorized access was never revoked. These two competing theories presented the jury with three factual questions: 1) What was the status of Denis's employment; 2) Was Denis's authorized access revoked; and if so, 3) when was it revoked?

Since the case largely hinged on these three questions, it was crucial to instruct the jury correctly on the meaning of "unauthorized access" in the context of an employee-employer relationship. Naturally, the parties proposed instructions on this issue that were on opposite ends of the spectrum. The Government wanted a broader instruction that implied to the jury that Denis's authorized access had been revoked automatically when her employment ended. Eddings wanted a

narrower instruction that implied to the jury that Denis's authorized access could only be revoked explicitly even if her employment had ended or was in suspension. In the absence of agreement or any Third Circuit precedent on the instruction, the Court was forced to draft its own instruction in order to state the law correctly and prevent the jury from being confused. *See United States v. Berg*, 144 F.2d 173, 177 (3d Cir. 1944) ("A court is free to use language of its own choice in charging the jury.").

A majority of the Instruction came from Eddings's Request 2. The Court added only the italicized wording to the following instruction proposed by Eddings:

> **A person uses a computer without authorization when the person has not received permission from the person who controls the right of access to the computer for any purpose,**
> > **or**
>
> **when the person who controls the right of access to the computer has withdrawn or rescinded permission to use the computer and the person uses the computer anyway.**
> > ***Once given, a person's authorized access may be revoked. Whether authorized access has been revoked or, whether the cessation of employment rescinds authorization, is a factual question for you to decide as the jury.***

N.T. 04/11/22 74:16–75:1, ECF No. 179.

The first sentence of the Court's addition is clearly established in case law and is common sense. Eddings therefore does not take issue with it. It is the second sentence that Eddings argues constitutes error: "Whether authorized access has been revoked or, whether the cessation of employment rescinds authorization, is a factual question for you to decide as the jury."

Eddings first argues that the Instruction violates the rule of lenity, which provides that "an ambiguous criminal statute is to be construed in favor of the accused." *Staples v. United States*, 511 U.S. 600, 619 n.17 (1994). The Court does not question the importance of the rule of lenity, but it is a "tool of last resort that applies only when, after consulting traditional canons of statutory construction, grievous ambiguity remains." *See United States v. Davis*, 139 S. Ct. 2319, 2352 (2019) (cleaned up). Eddings does not elaborate on why or how the rule of lenity should have been

applied to the applicable statute in this case. The Defendants were charged with unauthorized access to a computer under 18 U.S.C. § 1030(a)(2). That section creates criminal liability for anyone who "intentionally accesses a computer without authorization." *Id.* There is nothing ambiguous about the language of the statute. *See Van Buren*, 141 S. Ct. at 1661 (holding that "[b]ecause the text, context, and structure" of § 1030(a)(2) support the Court's reading of the statute, the rule of lenity was not "in play"). Denis either had authorization to access the email account or she did not. The Instruction told the jury that it was a factual question for them to determine, and they determined that she did not have authorization.

Eddings also argues that the Instruction was tailored specifically to fit the Government's theory of prosecution and that her "entire defense had been blown to bits by the Court-created jury instruction which directed that, *as a matter of law*, *cessation* of employment meant 'unauthorized access.'" Mot. 13 (emphasis in original). That is simply not true. The Government's theory was that Denis's termination of employment automatically revoked her authorized access to the email account. Thus, if the Court were to craft an instruction tailored to that theory, it would have instructed the jury that, "if you find that there was a termination of Denis's employment, then you *must* also find that she accessed the email account without authorization." But the Court did not give that instruction; instead, it instructed the jury that, "whether authorized access has been revoked or, whether the cessation of employment rescinds authorization, is a factual question for you to decide."

Contrary to Eddings's assertion that the Instruction told the jury that cessation of employment equals unauthorized access as a matter of law, it instructed the jury that cessation of employment *does not* necessarily mean Denis's authorized access was revoked. Moreover, it did not instruct the jury that there was a cessation of Denis's employment; it left that question for the jury. The Instruction therefore is not contrary in any way to Eddings's theory of defense.

The Instruction did not preclude Eddings from arguing that Denis's employment was merely paused. It did not state that there had been either cessation or termination of employment, only that if there was, then that was one factor to consider when determining whether Denis's authorized access had been revoked. Assuming that the jury did find that Denis's employment had been paused or terminated, the Instruction still allowed for Eddings to argue that Denis's authorized access had not been revoked. Under the Instruction, Denis's employment status was only one thing to consider when determining if her access had been revoked. Indeed, it is possible that the jury determined that Denis's employment had not been officially terminated or even paused, but still found that her authorized access had been revoked based on the other evidence presented during trial. For all these reasons, Eddings's challenge to the use of "cessation" is also without merit.

Eddings also takes issue with the timing of when the parties were told about the Instruction. It is true that the Court did not reveal the final wording of the Instruction until shortly before closing arguments, but Eddings never asked the Court for a recess to consider the Instruction before giving her closing argument; the Court cannot err by not granting a request that was never made. Moreover, Eddings cannot in good conscience claim that she did not know that the jury would ultimately have to decide whether Denis's authorized access had been revoked and that Denis's employment status would be one thing for the jury to consider in their deliberations. Indeed, the Court stated as much in an opinion it issued in this case back in June 2021, nearly one year before the trial. *See* ECF No. 114; *Eddings*, 2021 WL 2527966, at *5 ("Rather, the issue of whether, after she terminated her employment, Denis remained authorized to access the IFC server is properly a question of fact for determination by a jury."). Further, Eddings and Denis both filed supplemental briefing and proposed instructions on this topic during the trial, thereby inviting the Court to continually reconsider the issue. *See, e.g.,* ECF No. 146 (filed April 8, 2022). Moreover, as the Court has explained above, Eddings's theory of defense could still exist within the framework of the

Instruction. Eddings was therefore not prejudiced by the timing of when she learned of the final wording of the Instruction.

In sum, the Instruction is an accurate statement of the law. The status of one's employment is not determinative of whether he/she has authorized access to a work computer; it is only one factor for a jury to consider among the other unique factors in each case. *See Clarity Services, Inc., v. Barney*, 698 F. Supp. 2d 1309, 1316 (M.D. Fla. 2010) (determining that an employee retained authorized access for several days after resigning). The Instruction allowed the jury to consider Denis's disputed employment status and all the other evidence presented during trial to determine the factual question of whether Denis's authorized access had been revoked. Thus, the Instruction was not given in error.

Moreover, the cases Eddings relies on to argue that the Instruction was not supported by existing law are unpersuasive. First, Eddings cites *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576 (E.D. Pa. 2016) for its statement: "This Court is persuaded by the reasoning of those opinions that have concluded that those who have permission to access a computer for any purpose, such as employees, cannot act 'without authorization' unless and until their authorization to access the computer is *specifically rescinded or revoked*." *Id*. at 595 (emphasis added) (citing *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133–34 (9th Cir. 2009)). Eddings focuses on the italicized language. Although the *Resultly* court cited to *Brekka* for this statement, *Brekka* does not stand for the proposition that an employee's authorized access to a work computer must be "specifically rescinded or revoked, as will be discussed in the next paragraph. *Resultly* is also unpersuasive because the facts are distinguishable. In *Resultly,* authorization was not given pursuant to an employment relationship, nor was the cessation/termination of employment in any way involved. Rather, the *Resultly* court considered whether a user of a publicly available website (QVC.com) had notice that web-crawling was prohibited. The court explained that "Resultly (and any other web

user) had permission to access information on QVC.com . . . [and] that QVC allowed certain entities, such as Google, to crawl its website." *See Resultly*, 159 F. Supp. 3d 596. However, "QVC specifically prohibited participants in its marketing affiliate program from crawling its webpage." *See id.* This prohibition appeared in QVC's Publisher Agreement. Resultly, a company that operates an online shopping application that utilizes a web crawling program, did not directly agree to comply with QVC's Publisher Agreement, but it did agree to the Terms of Service of a sub-publisher, which required compliance with QVC's terms and conditions. *See Resultly*, 159 F. Supp. 3d at 597.  Interpreting the allegations in the light most favorable to the plaintiff under the motion to dismiss standard, the *Resultly* court found that Resultly had notice of the prohibition on web-crawling and could infer that it acted without authorization. *See id.* at 597. Given the significant differences in the cases, this holding has no bearing on whether a criminal jury could properly consider whether a cessation of employment rescinds authorization from an employer.

Next, Eddings relies on the decision by the Ninth Circuit Court of Appeals in *Brekka* but misquotes the court's holding.[4] Contrary to Eddings's brief, the *Brekka* court did NOT state: "If the computer owner has not affirmatively rescinded the defendant's right to access the computer, any existing authorization/permission remains," as Eddings quotes. *See* Mot. 9–11 n.5 (misquoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134-35 (9th Cir. 2009)). Rather, *Brekka* stated: "we hold that a person uses a computer 'without authorization' under §§ 1030(a)(2) and (4) . . .

---

[4]      In the Motion for a New Trial, counsel for Eddings states:
In Brekka, the Ninth Circuit stated that "where access is authorized or unauthorized depends on actions taken by the employer.... If the computer owner has not *affirmatively rescinded the defendant's right to access the computer, any existing authorization/permission remains*." 581 F.3d at 1134-35 (emphasis added).
Mot. 10 n.5; *See also* Reply 10, ECF No. 182 (same). However, the second sentence quoted above is not in the *Brekka* opinion, nor is any version of the sentence.  *See generally Brekka*, 581 F.3d 1127.  In fact, the words "computer owner," "affirmatively," and "existing" appear nowhere in the entire opinion. After the misquote to *Brekka*, Eddings includes a citation to *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016), *see* Mot. 10 n.5; Reply 10, but the alleged quote to *Brekka* does not appear in that case either.

when the employer has rescinded permission to access the computer and the defendant uses the computer anyway." *Brekka*, 581 F.3d at 1134–35. Noticeably absent from the court's holding is that the rescission must be "affirmatively" stated, as suggested by Eddings. In fact, the court also stated: "[t]here is no dispute that if Brekka accessed LVRC's [employer's] information on the LOAD website after he left the company in September 2003, Brekka would have accessed a protected computer 'without authorization' for purposes of the CFAA." *Id.* at 1136. *See also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016) (quoting same from *Brekka*). This statement implies *Brekka* concluded that affirmative rescission is not required and that termination of employment automatically rescinds authorization. Regardless, this Court did not instruct the jury that termination of employment automatically rescinds authorization; rather, it left the impact of Eddings's employment status on her authorization to the jury to consider.

Eddings also cites to *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016), for the proposition that revocation must be explicit. However, although the court found that "a defendant *can* run afoul of the CFAA when he or she has no permission to access a computer or when such permission has been revoked explicitly," *see id.* at 1067 (emphasis added), it did not hold that revocation must be explicit. To the contrary, this finding is based on an analysis of the decision in *Brekka*, during which discussion the *Facebook* court repeated the statement that ". . . if Brekka accessed LVRC's [employer's] information on the LOAD website after he left the company in September 2003, Brekka would have accessed a protected computer 'without authorization' for purposes of the CFAA." *Id.* at 1166 (quoting *Brekka*, 581 F.3d at 1136). Again implying that explicit revocation is not required. Furthermore, the revocation in *Facebook* was explicit; therefore, the court had no need to address whether explicit revocation was required.

For all these reasons, the Court did not err as a matter of law in giving the Instruction. *See United States v. Phillips*, 874 F.2d 123, 128 (3d Cir. 1989) (stating that a new trial will be granted

"if the district court erred as a matter of law in instructing the jury"). Furthermore, given the absence of Third Circuit precedent on this issue, the Court did not abuse its discretion in giving the Instruction. *See United States v. McDade*, 404 F. App'x 681, 685 (3d Cir. 2010) ("[N]either party cites any case law in this Circuit that addresses the propriety of giving this instruction. Accordingly, we will find that the District Court did not abuse its discretion in refusing to give [the defendant's] proposed instruction."); *United States v. Smith*, 789 F.2d 196, 204 (3d Cir. 1986) (holding that "[t]he district court has wide discretion in charging the jury").

### 5. *Prosecutorial Misconduct*

Lastly, Eddings contends that the Court erred when it denied her motion for a mistrial based on the prosecutor's comments in his rebuttal. Eddings argues that the prosecutor's comment in his rebuttal that the defendants were not charged with extortion simply because they never got any money from the Foundation warranted a mistrial.

Assuming for the purpose of argument that the prosecutor should not have made the comment and that it was not in fair response to Eddings's closing argument, the Court disagrees that the comment made the trial so unfair that Eddings was denied due process.

Prosecutorial comments made at trial amount to a constitutional violation when it can be shown that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In evaluating whether the alleged misconduct rose to the level of a constitutional violation, courts examine the prosecutor's conduct in the context of the trial as a whole and assess the severity of the conduct, the effect of curative instructions, and the quantum of evidence against the defendant. *Reid v. Beard*, 420 Fed. App'x 156, 159 (3d Cir. 2011). Typically, a combination of improper remarks is required to show prejudicial impact, and a new trial is compelled by the argument as a whole rather than a single

instance or type of impropriety. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207–08 (3d Cir. 1992). In determining whether a prosecutor's remarks made the trial unfair, a court should consider the remedial effect of curative jury instructions. *See Reid*, 420 Fed. App'x at 159. For example, in *Donnelly v. DeChristoforo*, the Supreme Court held that the prosecutor's statements regarding his personal belief in the defendant's guilt were not so prejudicial that a curative instruction would fail to mitigate the effect of the statements. *Donnelly*, 416 U.S. 637, 644 (1974).

Here, the prosecutor's comments regarding extortion were followed by a curative jury instruction given by the Court. The Court's instruction specifically instructed the jury that the Defendants had not been charged with extortion, were not to consider why they were not charged with extortion, and to disregard any statements about this point. *See* N.T 04/11/22, 46:10–16, ECF No. 179. Although some occurrences at a trial may be too clearly prejudicial for a curative instruction to mitigate their effect, the prosecutor's comment here about why the Defendants were not charged with extortion does not rise to such a level.

In addition to the curative instruction, the Court had also instructed the jury at the beginning of the case that: "The following are not evidence: the statements and arguments of the lawyers for the parties in the case." N.T. 04/04/22 6, ECF No. 174.  The Court repeated this instruction in its final jury instructions, further eliminating the possibility of any prejudice. The Court also instructed the jury immediately prior to closings that "what is said in closing arguments is not evidence." *See* N.T. 04/11/22 28, ECF No. 179.  Accordingly, the prosecutor's statement is not grounds for a new trial. *See United States v. Evdokimow*, 726 F. App'x 889, 899–900 (3d Cir. 2018) (concluding that even in the absence of a curative instruction, the prosecutor's prejudicial comments were not grounds for a new trial because the district court "charge[d] the jury at the end of trial that it should decide the case based on the evidence and not on sympathy or bias, and that the arguments of counsel were not evidence"); *United States v. Gaines*, 726 F. Supp. 1457, 1469 (E.D. Pa. 1989)

(determining that there was no probability of prejudice from improper remarks by the prosecutor because the "court instructed the jury that counsel's comments were not evidence and should not be considered as indicative of anything").

Eddings also argues that the prosecutor's comment in rebuttal that Eddings used Denis's mental health issues to take advantage of her warranted a mistrial. For the reasons just explained, the Court's instruction that the attorneys' statements are not evidence eliminated the possibility of prejudice. However, assuming there was any risk of prejudice, the Court determines that it is not reasonably probable that the comment influenced the verdict.

"Improper comments during closing arguments rarely rise to the level of reversible error." *Pierce v. City of Philadelphia*, 391 F. Supp. 3d 419, 439 (E.D. Pa. 2019) (cleaned up) (quoting *Dunn v. HOVIC*, 1 F.3d 1371, 1377 (3d Cir.), *modified*, 13 F.3d 58 (3d Cir. 1993)). The cumulative thrust of the prosecutor's closing argument here was proper when considered as a whole. *See id.* at 440. Moreover, the prosecutor's comment was a single blip in a trial that spanned six days. This Court may only grant a new trial based on a single improper comment if that comment was so prejudicial that it creates a reasonable probability that it influenced the verdict. Put simply, the prosecutor did not make any such comment in this case.

Eddings also argues that a new trial should be granted because the prosecutor disregarded the court's instruction to remain at counsel table during closing arguments and, instead, "walked around to the jury box, leaned on it with his arms, gestured with his hands, and pointed to the screen to emphasize his presentation," creating an "an unfair advantage in closing." *See* Mot. 20.  No objection was made during the prosecutor's closing or rebuttal, but Eddings's counsel moved for a mistrial during the next recess. The Court denied the motion, finding that the prosecutor's "walking from his chair was minimal. It was de minimis and there was no objection at the time it happened." *See* N.T. 04/11/22 36, ECF No. 179. The Court found that the prosecutor "might have walked two

foot to three foot beyond your chair and that was it. And I don't see how that prejudiced anyone . . . ." *Id.* Eddings has not shown or even suggested how she was prejudiced by the prosecutor's movement. The remaining arguments by counsel for Eddings regarding the prosecutor's "behavior" in this case are similarly unsupported and do not show any prejudice to Eddings. *See* Mot. 17.

## V.     CONCLUSION

There is not a reasonable probability that the alleged errors pointed out by Eddings influenced the verdict. Most of the alleged errors are not errors at all. The only alleged error that has any support—the prosecutor's comments during closing argument—is not so serious that it warrants a new trial. The Defendants' motions for a new trial are therefore denied.

A separate Order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge